

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BOLLORE, S.A., et. al., | § | |
| Plaintiffs, | § | |
| v. | § | Civil Action No. 3-99CV1196-R |
| IMPORT WAREHOUSE, INC., et. al., | § | |
| Defendants. | § | |

### IMPORT WAREHOUSE'S RESPONSE TO PLAINTIFFS' MOTION TO REOPEN THE CONTEMPT HEARING

Once again, Plaintiffs (collectively, "Bolloré") present this Court with unreliable and inadmissible hearsay evidence and ask the Court to hold Defendants Import Warehouse and Ravi Bhatia (collectively, "Import Warehouse") in contempt based on this evidence. Import Warehouse agrees that this Court should rule on Bolloré's allegations, but it need not hold another hearing to do so. This Court has all the evidence necessary to decide this matter. Even if this Court were to consider Bolloré's hearsay evidence, Bolloré cannot prove by clear and convincing evidence that Import Warehouse sold counterfeit Zig-Zag product to International Foods.

### I.  Background

Bolloré seeks to reopen the contempt hearing to introduce the hearsay testimony of one of its sales managers, Tim Fournier. In his declaration, Fournier describes finding allegedly-counterfeit Zig-Zag product at International Foods in New Orleans, Louisiana. Moreover, Fournier says that Mr. Hiren Shah, who is responsible for purchases at International Foods, told him that the allegedly-counterfeit Zig-Zag papers that Fournier found had come from Import

Warehouse. Fournier also claims that Shah told him that International Foods was completely out of Zig-Zag papers before it ordered more from Import Warehouse. Fournier's declaration is inadmissible hearsay. More importantly, however, Fournier's declaration is inaccurate and misleading. Shah testified at his deposition that he could not identify the source of the allegedly-counterfeit Zig-Zag product found at his store, nor could he say for certain that International Foods was out of Zig-Zag product before he placed his order with Import Warehouse. Thus, Shah's admissible deposition testimony[1] directly contradicts Fournier's hearsay declaration.

## II.    Argument and Authorities

### A.    Bolloré's "evidence" is inadmissible hearsay.

Fournier's declaration – and any in-court testimony Fournier might provide regarding what Shah or anyone else allegedly told Fournier – is inadmissible under the Federal Rules of Evidence. The Federal Rules of Evidence, which apply to contempt proceedings, forbid the admission of hearsay except under limited circumstances.[2] FED. R. EVID. 1101(b), 801(c). Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c).

Fournier's proposed testimony about what Shah supposedly told him is hearsay. First, Bolloré offers Fournier's out-of-court statements to prove the truth of the matter asserted – namely, that Shah told Fournier that the allegedly-counterfeit Zig-Zag papers Fournier found at International Foods came from Import Warehouse, and that he was out of Zig-Zag papers when

---

[1] Shah's deposition is admissible under Federal Rule of Evidence 804(b)(1) and Federal Rule of Civil Procedure 32(a)(3)(B).

[2] None of the exceptions in Rules 803, 804 or 807 applies to Fournier's declaration, nor does Bolloré argue that any exception applies.

he placed his latest order from Import Warehouse. Second, within Fournier's statement, Bolloré also offers Shah's alleged out-of-court statement to prove the truth of the matter asserted – namely, that the allegedly-counterfeit Zig-Zag papers found at International Foods had, in fact, come from Import Warehouse, and that he was out of Zig-Zag product when he placed his latest order from Import Warehouse.

Bolloré's attempt to introduce this inadmissible hearsay testimony is a vivid example of the dangers the Supreme Court associated with hearsay in *Williamson v. United States,* 512 U.S. 594, 598 (1994):

> The declarant might be lying; he might have misperceived the events which he relates; he might have faulty memory; his words might be misunderstood or taken out of context by the listener. And the ways in which these dangers are minimized for in-court statements—the oath, the witness' awareness of the gravity of the proceedings, the jury's ability to observe the witnesses demeanor, and, most importantly, the right of the opponent to cross-examine—are generally absent for things said out of court.

Here, Bolloré not only seeks to introduce hearsay testimony, which is subject to particular dangers, they have also failed to inform the Court that Fournier's declaration regarding what Shah supposedly told him was controverted by Shah himself at his deposition. Bolloré's story is therefore incomplete and misleading.

Under oath, Shah testified that he does not know the source of the allegedly-counterfeit Zig-Zag paper Fournier found at International Foods. Specifically, Shah testified that:

(1)   he had no way of identifying the source of the allegedly-counterfeit inventory Fournier took with him;[3]

---

[3] Shah Dep. at 91-92 (Pls.' App. at 122-123).

**Import Warehouse's Response to Bolloré's Motion to Reopen the Contempt Hearing** – Page 3
009999 8900 DALLAS 575520 v1

(2) the Zig-Zag papers are all stored in one slot without differentiation by supplier;[4]

(3) Zig-Zag papers from different suppliers are often mixed in one case during restocking;[5]

(4) during restocking older papers are often placed on the top of the opened new cases and are mixed in the case when enough new boxes have been removed to create space for the older boxes;[6]

(5) he was may either have been completely out of papers or just low on papers when he ordered Zig-Zag papers from Import Warehouse in March, 2002;[7]

(6) "low" on Zig-Zag papers means that three to five cases are currently in stock in the warehouse;[8]

(7) some product from a July 2000 order from COD may have been in the warehouse when Shah ordered from Import Warehouse;[9] and

(8) it is possible that the allegedly-counterfeit Zig-Zag product Fournier found came from a jobber in a switch for other comparably priced items.[10]

---

[4] *Id.* at 53-54 (Pls.' App. at 84-85).

[5] *Id.* at 55 (Pls.' App. at 86).

[6] *Id.*

[7] *Id.* at 18-19 (Pls.' App. at 49-50).

[8] *Id.* at 74, 91 (Pls.' App. at 105, 122).

[9] *Id.* at 52-53 (Pls.' App. at 83-84).

[10] *Id.* at 43-46 (Pls.' App. at 74-77); *Id.* at 50-51 (Pls.' App. at 81-82).

**Import Warehouse's Response to Bolloré's Motion to Reopen the Contempt Hearing – Page 4**

Bolloré must prove contempt by clear and convincing evidence. *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995). The only evidence they present to this Court that links Import Warehouse to the allegedly-counterfeit Zig-Zag product found at International Foods is Fournier's hearsay declaration. But Shah testified that he could not identify the source of the allegedly-counterfeit Zig-Zag papers, and that he may have had some Zig-Zag product in stock when he placed his order with Import Warehouse. Indeed, Shah testified that the papers could have been from at least two other sources. There is thus no credible, admissible evidence that connects Import Warehouse to the allegedly-counterfeit Zig-Zag product. This Court should reject Bolloré's attempt to have Import Warehouse found in contempt.

     B.    <u>Considering the inadmissible hearsay will not assist the Court in evaluating the witnesses.</u>

Bolloré claims that reopening the hearing will allow the Court better to determine the credibility of Ravi Bhatia. But the "evidence" that Bolloré presents comprises only hearsay declarations of its own interested witnesses. Even if the Court admitted this inadmissible hearsay, it could be afforded no weight or credibility. If anything, Fournier's hearsay declaration demonstrates that he is not a credible witness. At best, he does not clearly remember what Shah said to him. Fournier's controverted testimony is particularly unhelpful as Bolloré must prove contempt by clear and convincing evidence and this "evidence" obviously fails to meet that standard.

Furthermore, the Court already had the opportunity to judge Mr. Bhatia's demeanor during his direct and cross-examination testimony during the contempt hearing on April 10, 2002. The Court therefore has all the information it needs to determine Mr. Bhatia's credibility.

**Import Warehouse's Response to Bolloré's Motion to Reopen the Contempt Hearing – Page 5**

Moreover, as discussed above, Shah has clearly stated that he cannot determine whether the allegedly-counterfeit papers that Fournier found at International Foods came from Import Warehouse. Bolloré therefore offers no credible evidence connecting Import Warehouse to the allegedly-counterfeit papers. Nothing that Shah said at his deposition contradicted Mr. Bhatia's testimony at the contempt hearing.

### III.    Conclusion

The Court already has all the evidence necessary to make its decision. Bolloré's new "evidence" is really just inadmissible hearsay. Furthermore, the Fournier declaration is not only inadmissible, it is also inaccurate, as Mr. Shah's deposition testimony directly controverts Fournier's declaration. Import Warehouse therefore respectfully urges the Court to decline Bolloré's invitation to find Import Warehouse in contempt.

Respectfully submitted,

JOHN M. CONE
Texas State Bar No. 04660100
JOHN R. EMERSON
Texas State Bar No. 24002053
Akin, Gump, Strauss, Hauer & Feld, LLP
1700 Pacific Ave., Suite 4100
Dallas, TX  75202
214/969-2800
214/969-4343 (Fax)

**ATTORNEYS FOR DEFENDANTS IMPORT WAREHOUSE, INC. and RAVI BHATIA**

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of June, 2002, a true and correct copy of the foregoing was served on the following:

| | |
|---|---|
| Lisa H. Meyerhoff<br>Jenkens & Gilchrist, P.C.<br>1445 Ross Avenue, Suite 3200<br>Dallas, Texas 75202-2799 | (via U.S. Mail) |
| Marcella Ballard<br>Proskauer Rose LLP<br>1585 Broadway<br>New York, NY 10036 | (via U.S. Mail) |
| Norton Rosenthal, Esq.<br>(counsel for Defendants Tarek Makki<br>and Joseph "Jihad" Makki)<br>Law Office of Norton Rosenthal<br>1717 Main Street<br>Suite 4050<br>Dallas, Texas 75201 | (via U.S. Mail) |
| David B. Miller, Esq.<br>(local counsel for Defendants Global Impex<br>Company and Hala Makki)<br>Bell, Nunnally & Martin, L.L.P.<br>3232 McKinney Avenue, Suite 1400<br>Dallas, Texas 75204 | (via U.S. Mail) |
| Christian E. Hildebrandt, Esq.<br>(counsel for Defendants Global Impex<br>Company and Hala Makki)<br>Vandeveer Garzia, P.C.<br>1450 W. Long Lake Road, Suite 100<br>Troy, Michigan 48098 | (via U.S. Mail) |
| Ali Mackie<br>13821 Wellesley<br>Dearborn, Michigan 48126 | (via U.S. Mail) |
| Kamal Turfah<br>765 Ardmore<br>Dearborn Heights, Michigan 48127<br>General Imports, Inc. | (via U.S. Mail)<br><br><br>(via U.S. Mail) |

<u>Registered Agent</u>:  Ali Mackie
32 Bradford Court
Dearborn, Michigan  48126

Kal Imports                                                (via U.S. Mail)
<u>Owner/Manager</u>: Kamal Turfah
765 Ardmore
Dearborn Heights, Michigan  48127

WS Imports                                                 (via U.S. Mail)
<u>Owner/Manager</u>:  Kamal Turfah
765 Ardmore
Dearborn Heights, Michigan  48127

_[signature]_